UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMARCUS YOUNG,

                    Petitioner,                  Case Number: 2:13-cv-12813
                                              HON. BERNARD A. FRIEDMAN

v.

STEVEN RIVARD,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Demarcus Young's *pro se* petition for a writ of habeas corpus. Petitioner challenges his convictions for carjacking, conspiracy to commit carjacking, assault with intent to commit murder, carrying a concealed weapon, and two counts of felony firearm. Respondent has filed an answer arguing that most of Petitioner's claims are procedurally defaulted and that all of the claims are meritless. For the reasons explained, the Court denies the petition.

## I.      Background

Petitioner's convictions arise from a shooting in Saginaw, Michigan. Petitioner was jointly tried with co-defendant Idris Young (Petitioner's brother). The Michigan Court of Appeals summarized the evidence leading to Petitioner's convictions as follows:

> Defendants' convictions arise from an incident outside the Blue Diamond liquor store in Saginaw, Michigan on May 16, 2009. As the victim entered the store, he observed two men standing outside. One man, whom the victim identified as Demarcus, was wearing a thick coat, which was unusual because of the warm weather. The other man, whom the victim identified as Idris, had the lower part of his face covered with his shirt or a cloth. According to the victim, as he walked by defendants, Idris made a gesture like he was racking a gun and made direct eye

contact with the victim, with a "cold look" in his eyes. When the victim left the store, Demarcus pointed a gun at him and told him to surrender his car keys. When the victim hesitated, Demarcus told him he was "not playing." The victim turned, ducked, and ran. He heard one gunshot as he ran. A videotape from the store's surveillance cameras showed that Demarcus fired a second time, and tried to fire a third time, but his gun jammed.

*People v. Brown*, No. 257256, 2005 WL 3505862, *1 (Mich. Ct. App. Dec. 22, 2005).

## II.     Procedural History

Petitioner was tried before a jury in Saginaw County Circuit Court and found guilty of carjacking, conspiracy to commit carjacking, assault with intent to commit murder, carrying a concealed weapon, and two counts of felony firearm. On December 11, 2009, he was sentenced to 18 to 40 years each for the carjacking and conspiracy convictions, 23 to 45 years for the assault conviction, and three to five years for carrying a concealed weapon conviction, all to be served concurrently with one another and consecutively to concurrent two-year terms of imprisonment for each felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims through counsel: (i) insufficient evidence to prove carjacking; (ii) insufficient evidence to prove assault with intent to commit murder; and (iii) offense variable 13 was incorrectly scored. Petitioner raised the following additional claims in a pro per supplemental brief: (i) ineffective assistance of trial counsel; (ii) judicial misconduct; (iii) prosecutorial misconduct; (iv) police misconduct; and (v) trial judge improperly acted as thirteenth juror. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Young*, No. 296724, 2011 WL 4634199 (Mich. Ct. App. Oct. 6, 2011). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals and an ineffective assistance of appellate counsel claim. The Michigan Supreme Court denied leave to appeal. *People v. Young*,

2

493 Mich. 890 (Mich. Nov. 20, 2012).

Petitioner next filed a motion for resentencing in the trial court arguing that the trial court improperly scored offense variables 6, 13, and 17.  The trial court denied the motion, but granted Petitioner's request to amend the sentencing information report.  Dkt. 15-19 at 2, ECF Pg. ID 854. Petitioner filed a motion for relief from judgment in the trial court challenging the scoring of offense variables 9 and 14.  On May 17, 2013, the trial court denied the motion.  Dkt. 15-20, ECF Pg. ID 855-56.

Petitioner then filed the pending habeas petition.  He raises these claims:

I.    Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and of his right to a jury trial under the 6th Amendment to the United States Constitution when trial judge refused and improperly denied the request for a new panel by all parties when the jury presented bias toward Petitioner and making comments about him being a thug.

II.   Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and of his right to a jury trial under the 6th Amendment to the United States Constitution when the trial judge engaged in judicial misconduct prior to and during the trial of Petitioner hindering him from being provided effective assistance of counsel.

III.  Petitioner  was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and of his right to a jury trial under the 6th Amendment to the United States Constitution when there was insufficient evidence of proof beyond a reasonable doubt that Petitioner was guilty of carjacking and conspiracy and assault with intent to murder.

IV.   Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and of his right to a jury trial under the 6th Amendment to the United States Constitution when trial judge improperly denied Petitioner's motion to suppress the in-court identification of Petitioner by alleged victim.

V.    Petitioner was deprived of his right under the 6th Amendment to the United States Constitution to effective assistance of counsel at trial when his trial counsel failed to point out to the jury where the firearm was discharged and how many times the firearm was discharged.

3

VI.     Petitioner was deprived of his right under the 6th Amendment to the United States Constitution to effective assistance of counsel at trial when trial counsel repeatedly pointed toward the guilt of Petitioner throughout the trial.

VII.    Petitioner was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and of his right to a jury trial under the 6th Amendment to the United States Constitution when trial judge improperly interfered with deliberations of the jury.

VIII.   Petitioner  was deprived of his right to due process and to a fair trial under the 14th Amendment to the United States Constitution and of his right to a jury trial under the 6th Amendment to the United States Constitution when trial judge improperly consolidated the trial of Petitioner before one jury.

IX.     Petitioner was deprived of his conviction and sentence of constitutionality by reason of the due process clause of the 14th Amendment of the United States Constitution. Trial judge improperly scored offense variables. (Offense variable 9, 13, 14).

## II.     Standard

This habeas petition is reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).   Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per

4

curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).   "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact *and* that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  *See* 28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.    Discussion

### A.    Procedural Default

Respondent argues that a number of Petitioner's claims are barred from review because they are procedurally defaulted. First, Respondent argues that certain claims are defaulted because Petitioner failed to raise them in accordance with state procedural rules and the state courts relied on that failure to deny relief. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the claims that Respondent argues were not raised in accordance with state procedural rules.

Second, Respondent argues that Petitioner's fifth and sixth claims are barred from review because they are unexhausted and procedurally defaulted. A prisoner seeking federal habeas relief must first exhaust his state court remedies by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The petitioner bears the burden of showing that state court remedies have been exhausted. *Prather v. Rees*, 822 F.2d 1418, 1420, n.3 (6th Cir. 1987). If a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to

exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).  However, a petitioner will not be allowed to present unexhausted claims unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal.  *Id.*, *citing Coleman*, 501 U.S. at 750-51.

Petitioner has not raised his fifth and sixth claims through one complete round of state court review.  Therefore, they are unexhausted.  No state court remedy is available to Petitioner to properly exhaust these claims because he already has filed one motion for relief from judgment in the state trial court and does not argue that his claims fall within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court.  It is unclear whether the petitioner asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of these claims.  Assuming he does, ineffective assistance of appellate counsel would not excuse his failure to present these claims on collateral review in state court.  *Hannah*, 49 F.3d at 1196.

Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U.S. 298, 321, 115 S. Ct. 851 (1995).  The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.  *Id*.  To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt."  *Id.* at 327.  Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.  Therefore, these claims are procedurally barred.

**B.      Denial of Motion to Dismiss Jury Venire**

Petitioner's first habeas claim concerns the trial court's denial of his motion to dismiss the entire jury venire. During jury selection, a prospective juror, Katherine Kelly, advised the court that she overheard one prospective juror ask another prospective juror, "what do you think about the two thugs in the courtroom?" Tr., 12/4/09, at 49. The trial court questioned Kelly extensively. Then, after ascertaining that Thomas Luplow was the juror who allegedly referred to the defendants as "thugs," the court questioned him outside the presence of the other jurors. Luplow denied making the comment, but, the court nevertheless dismissed him from the panel. The court also separately questioned the juror to whom Luplow allegedly made this comment, Rickie Lewis. Lewis denied that anyone commented to him that the defendants were "thugs." The court dismissed Lewis from the panel. The court then called in the entire jury venire and asked whether any juror had been spoken to about the case or any of the participants involved. No jurors indicated they had been spoken to about the case. Defense counsel moved for the entire venire to be excused. The trial court denied the motion and, instead, questioned each prospective juror individually about whether anyone had spoken to them about the case. All of the prospective jurors denied being spoken to about the case. The court then proceeded to select a jury.

The Sixth Amendment right to trial by jury encompasses the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717 (1961). The right to due process, however, does not necessarily require a new trial in every instance in which a juror is potentially biased. *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*

The Michigan Court of Appeals held that the trial court handled the situation carefully and

8

fairly and found no basis for Petitioner's claim that he was denied a fair trial. *Young*, 2011, WL 4634199 at *8-9. This Court agrees. Petitioner's claim that prospective juror Luplow's alleged comment somehow tainted the entire jury venire lacks *any* support in the record. The trial court judge undertook lengthy proceedings to ensure that no prospective jurors other than those identified heard the comment. He questioned each juror individually on this subject to ensure that jurors would be forthright in their responses. Petitioner has not proven that the "thugs" comment was ever made, or that, even if it was, that anyone prospective juror other than the two excused jurors and Katherine Kelly, heard the comment. He also has not shown that any of the seated jurors were biased. The Michigan Court of Appeals' ultimate conclusion that the trial judge did not abuse his discretion in concluding that the panel had not been prejudiced is neither contrary to nor an unreasonable application of clearly established federal law.

### C.      Judicial Bias Claim

Petitioner argues that he was denied his right to a fair trial by several of the trial court's rulings which, Petitioner claims, evidence judicial bias. Petitioner claims that the trial court improperly refused to give instructions on lesser included offenses, improperly instructed the jury on carjacking, improperly handled the incident during jury selection, and somehow assisted the delayed disclosure of the victim's police statement.

An impartial judge is a necessary component of a fair trial. *In re Murchison*, 349 U.S. 133, 136 (1955). The Supreme Court established the standard for assessing claims of judicial bias in *Liteky v. United States*, 510 U.S. 540 (1994). The Supreme Court explained the measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring
> in the course of the current proceedings, or of prior proceedings, do not constitute a

basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 554.

The Supreme Court cautioned that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display," do not establish bias or partiality. *Id.* at 556.

The Michigan Court of Appeals, the last state court to issue a reasoned opinion regarding the judicial bias claim, found no judicial bias, holding in relevant part:

Our review of the record does not support Demarcus's claims of judicial bias or judicial misconduct. Demarcus's mere claim that the trial court violated the Code of Judicial Conduct, without specifying the factual basis for this claim, is insufficient to present this issue for review. *Waclawski*, 286 Mich. App. at 679. Demarcus also argues that the trial court's handling of an incident during jury selection (when a prospective juror allegedly referred to the defendants as "thugs") shows that the court was biased. On the contrary, the court's decision to dismiss the juror in question and to question the remaining jurors to ascertain whether they heard the remark reflects the judge's effort to achieve fair judgment. Thus, there is no merit to this claim. Further, there is no basis in the record for finding that the trial court was somehow complicit in the delayed disclosure of the victim's recorded police statement. Demarcus's remaining claims are based on adverse rulings by the trial court, but without a showing of either deep-seated favoritism or antagonism inconsistent with fair judgment. Thus, Demarcus has failed to overcome the heavy presumption of judicial impartiality.

*Young*, 2011 WL 4634199 at *9.

On habeas review the inquiry focuses on whether the trial judge's conduct rendered the trial fundamentally unfair. "To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the

10

defendant to a substantial degree." *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985). Although Petitioner disagrees with many of the trial court's rulings, he has not shown that the judge relied on extrajudicial sources in rendering his decisions or that he showed any degree of favoritism for the prosecution or antagonism for the defense. The trial transcript shows the trial judge ruled carefully on objections. The Court sees no bias in the trial court's comments or conduct. This is not a case where the trial court could, in any sense, be said to have indicated "a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties for the purpose of furthering or supporting the contention of such party." *Knapp v. Kinsey*, 232 F.2d 458, 465-67 (6th Cir. 1956).

Considering the entire record, the Court concludes that the trial court's conduct and comments did not evidence any particular bias toward Petitioner. Therefore, the Michigan Court of Appeals' ruling was not contrary to or an unreasonable application of Supreme Court precedent.

### D.   Sufficiency of the Evidence

Petitioner's third claim argues that insufficient evidence was presented to sustain his convictions. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th

11

Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*  "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326).

1.    Carjacking

First, Petitioner argues that the evidence was insufficient to prove the crime of carjacking because no actual larceny of a motor vehicle occurred.  The Michigan Court of Appeals analyzed the statutory language and concluded that the statute did not require the completion of a larceny. The state court reasoned:

The carjacking statute, M.C.L. 750.529a, provides, in pertinent part:

12

(1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

(2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

***

Defendants argue that the phrase "in the course of committing a larceny" contemplates a completed or actual larceny, not an attempted larceny. In *People v. Williams*, 288 Mich. App 67; 792 N.W.2d 384 (2010), [aff'd 491 Mich. 164], this Court considered this identical issue in the context of construing the companion armed and unarmed robbery statutes, MCL 750.529 and MCL 750.530, respectively. Like the carjacking statute, the unarmed robbery statute, MCL 750.530(1) and (2), proscribes conduct "in the course of committing a larceny," which the statute defines as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny[.]"  The armed robbery statute, MCL 750.529, incorporates the same conduct proscribed under MCL 750.530.

In *Williams*, 288 Mich. App. at 75-76, this Court concluded that the robbery statutes incorporate acts taken in an attempt to commit a larceny, regardless of whether the act is completed, explaining:

> The legislative definition of "in the course of committing a larceny" specifically "includes acts that occur in an attempt to commit the larceny...."
>
> As such, the statutory language specifically considers and incorporates acts taken in an attempt to commit a larceny, regardless of whether the act is completed.  This is consistent with the language of MCL 750.530(2), which distinguishes, by the use of the word "or," acts committed in "an attempt to commit the larceny" from those acts occurring "during the commission of the larceny" or any subsequent acts comprising flight or efforts to retain any property.  The term "or" is "used to connect words, phrases, or clauses representing alternatives." Random House Webster's College Dictionary (1997). Hence, an attempt to commit a larceny comprises a separate and distinct action and is not merely a component of a completed larceny.

13

***

In consideration of our analysis in *Williams*, we reject defendants' argument that the failure to establish a completed larceny precluded their convictions for carjacking. The evidence that Demarcus threatened the victim with a gun while demanding his car keys was sufficient evidence of an act in the course of committing a larceny of a motor vehicle as defined in the carjacking statute. Accordingly, we reject this claim of error.

*Young*, 2011 WL 4634199 *2-4.

"Federal courts are obligated to accept as valid a state court's interpretation of state law." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). This includes a state court's construction of the elements of crimes under state laws. *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Thus, under Michigan law, the prosecution did not need to establish an actual larceny of a motor vehicle to prove the crime of carjacking. Therefore, the state court's conclusion that testimony that Petitioner threatened the victim with a gun while demanding his car keys was sufficient to satisfy the larceny element of the crime of carjacking was not an unreasonable application of *Strickland*.

2.    Conspiracy

Next, Petitioner argues that the prosecution failed to produce sufficient evidence to support his conspiracy conviction. Under Michigan law, the elements of conspiracy are: "(1) the defendant intended to combine with another person; and (2) the participants intended to accomplish an illegal objective." *Young*, 2011 WL 4634199 at *5, *citing People v. Mass*, 464 Mich. 615, 629; 628 N.W.2d 540 (2001). The prosecutor must prove "that the parties specifically intended to further, promote advance, or pursue an unlawful objective." *Id.* (quotation omitted).

The Michigan Court of Appeals held that sufficient evidence was presented to establish each element of conspiracy. The state court reasoned that the suspects' close proximity to one another

14

when they first walked toward the victim, their inappropriate dress (Petitioner wore a heavy coat despite the warm weather and Idris attempted to conceal his face with a bandana or shirt), Idris' intimidating conduct, and Petitioner's assault of the victim, taken together could "support a legally cognizable inference that Idris and Demarcus were acting together in pursuit of a common plan to the carjack the victim." *Id.* at 6. There is no indication that the state court was unreasonable. It viewed the evidence in the light most favorable to the state and assessed its sufficiency, under the essential elements of the charged offense, to support the jury's verdict. Habeas relief is denied on this claim.

3.      Assault with intent to commit murder

Finally, Petitioner argues that insufficient evidence was presented to convict him of assault with intent to commit murder. Under Michigan law, the elements of assault with intent to commit murder are (1) an assault, coupled with (2) specific intent to kill, (3) which, if successful, would make the killing murder. *People v. Taylor*, 422 Mich. 554 (Mich. 1985); *see Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). The intent to kill may be proven by inference from circumstantial evidence. *Warren*, 168 F.3d at 361.

The victim testified that he heard one gunshot as he fled. The store's surveillance video showed that Petitioner fired a second time, and attempted to fire a third shot. The Michigan Court of Appeals' decision that this was sufficient for a reasonable juror to infer that Petitioner had the intent to kill Petitioner was a reasonable application of *Jackson*.

**D.      In-Court Identification**

In his fourth habeas claim, Petitioner argues that the trial court improperly denied his motion to suppress in-court identification. The victim reviewed a surveillance videotape from the liquor

15

store shortly before he was shown a photographic lineup from which he identified Petitioner as one of the perpetrators. Petitioner argues that this procedure was unduly suggestive.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Id.* Where an in-court identification was potentially impacted by an impermissibly suggestive pretrial identification procedure, the governing test is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

The Michigan Court of Appeals held that the in-court identification was not impacted by an impermissibly suggestive pretrial procedure, stating, in pertinent part:

> In this case, the victim's prior viewing of the surveillance video does not render Demarcus's identification in the photographic lineup as impermissibly suggestive. An identification procedure is impermissibly suggestive if it gives rise to a likelihood of misidentification. *Kurylczyk*, 443 Mich. at 311-312. The videotape was not created for the purpose of identifying Demarcus. Viewing the video recording would have only afforded the victim the opportunity to see on the recording what he had already witnessed. It did not increase the likelihood that he would misidentify Demarcus in a photographic lineup conducted several days later. Moreover, the victim testified at an evidentiary hearing related to this issue that he could not recall whether he viewed the surveillance video before or after the photographic lineup. He further stated that the faces were distorted in the video, and that he remembered the perpetrators' faces from witnessing the incident. The trial court found that the victim was credible when he testified that he identified the perpetrator's face based on his recollection of the incident, and not from viewing the videotape. Given this

16

record, Demarcus fails to provide this Court with a basis for concluding that Peters's challenged testimony concerning the timing of the photographic lineup affected the admissibility of the identification evidence.

Demarcus also argues that the surveillance videos were suggestive because the perpetrators depicted in the videos had their faces covered, whereas the subjects in the photographic lineup did not have covered faces. He also argues that the recording was somehow suggestive because the quality was poor and the perpetrators' faces were not perceptible. Neither of these factors would render the photographic procedure unduly suggestive. They do not create a substantial likelihood of the victim misidentifying Demarcus in the photographic lineup. Indeed, these factors undermine Demarcus's contention that the victim's identification was based on the videotape rather than his own independent recollection.

For these reasons, Demarcus is not entitled to relief on the basis of the identification issue.

*Young*, 2011 WL 4634199 at *10-11.

The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent. Moreover, even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable. The victim testified that he had the opportunity to see both perpetrators clearly. He testified that he looked Petitioner in the eye both before and after he left the liquor store. The victim was also able to describe the perpetrators' clothing and physical build. Given these circumstances, the Court concludes Petitioner fails to show that the identification was unreliable.

### E. Jury Deliberations

Petitioner argues that the trial judge's response to a note from the jury improperly invaded the province of the jury. During deliberations, the jury submitted a note asking "is there anything we can do regarding someone not able to follow the law and basing their decision on their belief?" Tr. 11/11/09, at 4. In response, the court reread two instructions to the jury, Mich. Criminal Jury

Instruction 3.1 (Duties of Judge and Jury), and 3.11 (Deliberations and Verdict).  Other than a conclusory allegation, Petitioner fails to allege how the rereading of these two basic instructions invaded the province of the jury and the Court discerns none.  Habeas relief is denied.

**F.     Joint Trial**

Next, Petitioner argues that he was denied his right to a fair trial because he was jointly tried with his brother, co-defendant Idris Young.

A petitioner bears a heavy burden to show that he was denied a fair trial by the failure to sever his trial from a co-defendant's when both allegedly participated in the same offense.  *See United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988).  "Courts should grant a severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Stanford v. Parker*, 266 F.3d 458-59 (6th Cir. 2001) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).  The decision whether to grant a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation." *Id.*  "[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing Mich. Ct. R. 6.121(C)).  "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 492 N.W.2d 490, 495 (1992)).

Petitioner argues that being tried jointly with his brother somehow compelled him not to

18

testify in his own defense.  The Michigan Court of Appeals denied this claim finding that "without an affidavit or other offer of proof of how Demarcus would have testified, there is no factual basis for his claim that he was prejudiced by the joint trials." *Young*, 2011 WL 4634199 at *8.  The Court agrees that Petitioner fails to explain why being tried jointly with his brother convinced him not to testify.  Many factors can influence whether a defendant chooses to testify at trial.  Petitioner may have chosen not to testify because of his brother's presence at trial, but, the fact of the joint trials did not prevent him from testifying.  Habeas relief is denied.

### G.        Scoring of Offense Variables

Finally, Petitioner argues that the trial court improperly scored offense variables 9, 13, and 14.  "'[F]ederal habeas corpus relief does not lie for errors of state law.'"  *Estelle v. McGuire,* 502 U.S. 62, 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of state law.  It does not implicate any federal rights.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").  "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review."  *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Coleman v. Curtin*, 425 F. App'x 483, 484-85 (6th Cir. 2011).  Therefore, habeas corpus relief is not available for this claim.

### III.       Certificate of Appealability

19

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability.

## IV.      Conclusion

For the foregoing reasons,

IT IS ORDERED that the petition for a writ of habeas corpus is denied.


IT IS FURTHER ORDERED that a certificate of appealability is denied.


                                   S/ Bernard A. Friedman_____
                                   BERNARD A. FRIEDMAN
                                   SENIOR UNITED STATES DISTRICT JUDGE

Dated:  October 9, 2015
             Detroit, Michigan

20